Good morning, Your Honors. May it please the Court, Charles Bonneau appearing for Petitioner and Appellant Ron Werth. I'd like to reserve two minutes. Your Honors, this Federal habeas action Excuse me one second. The clock is not running. Is there a problem with it? Well, I can't see it, so that's fine. I'll use my watch for the moment. Thank you. This Federal habeas action arises from a State murder conviction which followed a trial of two other people for the same offense. The constitutional issue has to do with the use of statements of a co-defendant, David Trujillo, in violation of confrontation. This confrontation violation is conceded, but the question is whether the confrontation violation was prejudicial. And that's the issue I'd like to address this morning. The State court of appeal opinion was facile at best. It treated the effect of accomplice testimony purely as a jury issue and declined to analyze the question of prejudice, of whether there was evidence other than the erroneous evidence which could support the conviction. But cutting to the chase, your client also confessed to his girlfriend who testified, and he also confessed to the cousin, Vidal, who testified. And having non-co-defendants testify to essentially the same thing, if not more, why is there prejudice? These people were not co-defendants only by the grace of God and their ability to work out a deal with the prosecution? Well, for whatever reason, they weren't, correct? It doesn't make any difference. Under California law, the question is whether they were accomplices, and they were. But that's a State law question. For Federal constitutional purposes, if they are not co-defendants, is there a different analysis as if they were co-defendants? The girlfriend was not a participant in the crime. No. There's no difference because it makes no difference whether they were charged or not or whether they made a deal or not. They remain accomplices forever. Under Federal constitutional law? Yes. They participated in the conspiracy that led to a man being killed, and several of them did time for it. And so the question for this Court is whether that is reliable testimony. And accomplice testimony is not reliable. And accomplices should not be permitted to attempt to corroborate each other, particularly when they had the opportunity to get their story together and to speak to each other about the so-called confession. This we don't concede that there ever was a confession. In fact, this was the construction of this story is apparent from the record. Brian Lutz came up with the third suspect idea after Mr. Quint was convicted of the same offense. And that's the first time we ever heard of a third suspect. None of the eyewitnesses said that there was a third suspect. And now this third suspect is Mr. Worth. Now, that story really grows legs when Investigator Lohr dragged Worth and Trujillo – I mean, Felstad and Trujillo in, and he told Felstad that Worth had confessed. He told him that he had confessed. Well, that was completely false. Lohr had never spoken to Worth. So he planted this false information in the mind of Felstad, who was an accomplice and was in the hot seat for his own conviction of first-degree murder. Then he was let go. And he went out and evidently talked to Cynthia Sanchez, his girlfriend, and Lupe Trujillo, and, of course, David Trujillo, who was also in on it. And the one thing they – yes. Two things. First of all, Lupe Trujillo was not an accomplice, was she? Yes, she was. Cynthia Sanchez testified that Lupe Trujillo told her that she knew about the robbery before it happened. That doesn't make her an accomplice. It does. It makes her participating in the conspiracy to execute a robbery. You mean if I know that somebody else is going to rob something, I become an accomplice? Well, I think there's reason to think that, yes. She was intimately involved with these people. Yes, she was. Well, at least she knew about the robbery in advance. And she was certainly an accessory. She didn't come forward. She was fully implicated in this and was facing time and wanted to collect a reward. So the only question for this Court is whether these people were biased. The lower court – And the other question is exactly what are – there is one statement that the government agrees was a confrontation clause problem. What statement is that? That was when Felstad testified that he looked at Trujillo's confession and agreed with it. Right. But it's – That's the statement. It is, but it's rather vague. I mean, in terms of – Rather vague? Well, it's a rather vague statement. I mean, it doesn't say that every piece of it he agreed with. And one can imply that and it would be a confrontation clause problem. But as it fits into the harmlessness inquiry, I mean, since the only statement is I agree with what this other guy said, all these – it's really a question of what the other guy said. Well, I – he said that he read the statement and that it was a confession and that it was a – he agreed with it. It was – I think it has all the details. But he didn't specifically say I agree with it as to Trujillo. I mean, that's a fair – I mean, as to Wirth, you know, I think that's a fair implication, but it's not a terribly strong one in terms of its harmful impact. They need corroboration for Felstad. And this is a goldmine. This is a goldmine. To say that the other participant gave a story that was identical to what I'm telling you now, this Court in Ocampo v. Vail held something very similar, that the – that the implication will – of such a story will violate confrontation. The – I understand that. I wrote that opinion and I feel strongly about it, but I still think in terms of the theory, that both of these people were accomplices, right? Who are we talking about now? Felstad and Trujillo. Well, Trujillo was certainly an accomplice. Right. Felstad was an accomplice. Right. And Felstad is saying I agree with what Trujillo said. Yes. It's as good as it is, but it's no better. If there's something wrong with one of them, there's something wrong with the other  Well, they were all coordinated. I understand they were. That's your theory. But all I'm saying is that if one of them is to be discounted as an accomplice, then the other one is to be discounted as an accomplice. Either that or neither of them are to be discounted as an accomplice, but it's not a terribly strong additional implication to whatever else was already there. These people all implicated themselves because they had a deal. Lutz had a deal. Zadal had a deal. Felstad had a deal. They all implicated themselves. This whole theory was argued to the jury, right? This was all the ‑‑ everything I'm saying here was made known to the jury. Right. And so, therefore, the ‑‑ to the extent that this is a ‑‑ it relies on confrontation violation evidence, the effect is prejudicial because there's nothing else to support it. Counsel, I think we ‑‑ you almost used up all of your time. If you wanted to save a little bit for a dollar. I'd like to reserve. Thank you very much. Good morning. Carlos Martinez from the California Attorney General's Office representing the APLE. I wanted to clarify California law as far as accomplices. An accomplice is one who is liable to prosecution for the identical offense charged. In this particular case, the charge was murder and attempted murder. Those were the two counts. Conspiracy was never charged. As a result, Cynthia Sanchez, Lupi Trejillo, those are ‑‑ those individuals are not accomplices. And ‑‑ but I want to also emphasize that ‑‑ Well, even if they were, they could be cross-examined, which is the constitutional issue. Correct. So their testimony would not be subject to being stricken on constitutional grounds, even if for State law purposes they were accomplices. That's correct. Okay. But their statements about what other people said are ‑‑ could be, perhaps. I mean, there's also a dispute here, as I understand it, about whether some of these statements are subject to profit or not. That's correct. Now ‑‑ Which is a ‑‑ yes, that's ‑‑ I was asking about a different issue, but that is also true. As far as Crawford is concerned, only one error occurred. It was the fact that John Feldstadt's tape-recorded confession was played in which he said that ‑‑ that he agreed with Trejillo's, David Trejillo's statement. That's the only confrontation clause violation. I identified that. The other two that are mentioned by appellant are not confrontation clause violations because they're not testimonial in nature. But we don't need ‑‑ I don't know what the ‑‑ what is the case law on that question at this point? In other words, as to whether statements that were made not under interrogation but at the same time not under any functional need ‑‑ I mean, the cases I know so far, they're saying that things are not testimonial, tend to deal with 911 calls or police communications to each other and so on. These were in the nature of confessions. They were not in the nature of interrogations. Is there any case law about that? There's no case law on that specifically. I misspoke. The case law, the cases generally say that if it's a private conversation, here Trejillo is talking to his girlfriend or ‑‑ and to Wirth's girlfriend, and Wirth is making statements to them. Those are private in nature, and there's no expectation. In fact, they sure hope that it doesn't come out in court, and therefore it's not testimonial under the Sixth Amendment. We don't need to reach that question if we ‑‑ No, you don't, Your Honor. You can simply apply the Van Arsdale factors that I mentioned in my brief. The best way to determine whether witnesses are credible is to see whether they match the testimony of the victims and the ballistic testimony in this particular case. And the witnesses that Mr. Bonneau attacks, they certainly did match. Unless the Court has any further questions, I'd like to submit it on the brief. I don't believe that we do. Thank you. Mr. Bonneau, you have about a minute remaining. Thank you, Your Honor. I think the Court has correctly identified and concluded that the real question here is not whether these people were accomplices, or not solely whether they were accomplices, but whether they are reliable witnesses. Well, reliability is classically a question for the jury. Once there's no constitutional bar or other bar to their testimony, their bias, their interest in the outcome, all of that is for the jury, isn't it? It was not necessarily resolved in the way the prosecution would like to think, because they did not, because they received additional information that they should not, the jury received information that they should not have. I think the Court has touched on another issue about the testimonial nature of these other witnesses, which is important. And the Court in Crawford and its post-Crawford cases has said the police interrogation is the paradigm for testimonial evidence. It has not closed the door on exactly what is testimonial evidence. In our view, when a group of co-conspirators or accessories or accomplices gets together and says, let's get our story straight, the detective has said that Worth has got to be in this, and if he is, then we'll have a deal. And if they make that kind of conversation, we don't have any evidence that they made that kind of conversation. You have an implication from the evidence, and you made that argument to the jury. We have the implication, and we think that that's what happened, and we think that that's what makes their statement, in fact, contrived and subject to testimonial theory, which has some plausibility to it, has very little to do with the Confrontation Clause issue that you're raising now. Well, if the – except that if the – if they're – if these are testimonial statements, they're trying to pile up corroboration here. They don't have much, and they want to convince the Court that they can get out from under the Crawford bar by saying that these were casual conversations made over the fence, as if nothing was happening, really of much importance. We think that's misleading. Counsel, when the Trujillo statement was referred to, was there an objection? Was the issue preserved about the admissibility of that? Yes. It was – in fact, it was – the whole issue was fully recognized before this even came up. Stick with me. There was an objection to the admission of that statement. Yes. And didn't the Court admonish the jury that they couldn't consider it to determine guilt? There was an admonishment. And was there any claim that that admonishment was not sufficient to avoid prejudice? Well, the United States Supreme Court has said that that's – that the admonishment is not sufficient in these circumstances. I'm asking what occurred at the trial. Was there any statement by defense counsel that that admonishment was insufficient? I don't know how he felt about it, but there's nothing more he could do. I'm talking about – what does the record show? Well, no. There's nothing more he could do at that point. He can't unring the bell. Your answer is he did nothing, then? I'm trying to conceive of what he could have done. He could have jumped up and down, stood on his head. There was nothing more to do at that point. The harm had been done. The effort had been made to fix it. The United States Supreme Court says that's not enough. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of both parties.
judges: Alarcon, Graber, Berzon, Cjj